UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LAWRENCE E. ROBERTSON

CIVIL ACTION

v.

NO. 14-806-JWD-EWD

THE HOME DEPOT, INC.

RULING AND ORDER

This matter comes before the Court on *Home Depot's Motion to Strike Recordings Used in Opposition* (Doc. 42) filed by Defendant The Home Depot U.S.A., Inc. ("Home Depot" or "Defendant").  Plaintiff Lawrence E. Robertson opposes the motion. (Doc. 61-1, 68.)  Oral argument is not necessary.  The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule.

The Court finds that the Plaintiff failed to disclose these witnesses in his initial disclosures and responses to Defendant's interrogatories, and these failures were not harmless or substantially justified.  As a result, the Court will strike the audio recordings and not consider them in connection with the Plaintiff's opposition to the Defendant's motion for summary judgment.  Further, because the Court reaches its decision on this basis, the Court need not address the Defendant's additional arguments, including the one that Plaintiff's counsel violated the Louisiana Rules of Professional Conduct.  Finally, the Court declines to award costs and attorney's fees; exclusion of the audio recordings is a sufficient sanction for the Plaintiff's conduct.

I.      Introduction and Procedural History

The procedural history of this case was discussed extensively in the Court's prior Ruling and Order (Doc. 74) on the Plaintiff's Motion to Amend and Supplement Response Filed to

1

Defendant's Motion for Summary Judgment (Doc. 50) and Home Depot's Opposition to Plaintiff's Motion to Amend and Supplement Response to Motion for Summary Judgment and Request for Fees (Doc. 57).  The Court need not repeat that summary here.  Instead, the Court will only highlight the relevant parts.

On December 29, 2014, Plaintiff filed a Complaint against Home Depot, alleging race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), retaliation in violation of Title VII and the ADEA, and retaliation for taking leave under the Family Medical Leave Act ("FMLA"). (Doc. 1.) Plaintiff also alleges race discrimination in violation of 42 U.S.C. § 1981 and makes state law claims under Louisiana Civil Code articles 2315 and 2320. (Doc 1.)

On March 16, 2016, Defendant filed a Motion for Summary Judgment seeking dismissal of Plaintiff's claims. (Doc. 24.)  After being granted several extensions of time in which to submit an opposition (Docs. 30, 34, 37, 38), the Plaintiff finally filed a response to Defendant's motion on May 13, 2016. (Doc. 39.)  A few days later on May 17, 2016, Plaintiff filed a Motion to Amend and Supplement Response Filed to (sic) Defendant's Motion for Summary Judgment (Doc. 40) seeking, for a variety of reasons, permission to file certain exhibits not previously attached to her opposition.

On May 24, 2016, Defendant filed the instant motion. (Doc. 42.)  Defendant seeks to strike Docs. 39-13-16 (resubmitted as Docs. 40-1-4) on several grounds discussed below.

On June 1, 2016, the Court held a status conference.  At this conference, the Court discussed with the parties the various pleadings which had been filed and the circumstances surrounding same. Counsel for Plaintiff indicated that, for the reasons outlined in the Motion to

Amend and Supplement (Doc. 40), there continued to be some confusion about the proper exhibits attached to that motion. Specifically, "[t]he Plaintiff advised in this conference that the current referenced exhibits attached to this motion, (Doc. 40) are incorrect." (Doc. 48.) Plaintiff requested that she be given permission to substitute the correct exhibits. There was also some discussion about additional exhibits which Plaintiff wanted to submit in opposition to Defendant's summary judgment motion.

At the conference, the Court granted Plaintiff's Motion to Amend and Supplement (Doc. 40), and "granted [Plaintiff] leave to file [the] correct exhibits into the record, and the **Clerk of Court is directed to accept Plaintiff's substituted exhibits, which shall be filed on or before 5 PM on Monday, June 6, 2016."** (Doc. 48 (emphasis in the original).) While not specifically reflected in the minute entry (but explicit in the Court's ruling), the Court specifically stated that no new exhibits would be allowed to be filed by Plaintiff.[1] In addition, "[P]aintiff was informed that no further extensions and no additional briefing will be authorized by this Court." (Doc. 48.)

The Court also advised the parties that it was considering Defendant's Motion to Strike. Also discussed at the status conference, although not reflected in the minute entry, was the Court's concern regarding Plaintiff's repeated motions for extension of various deadlines and the reasons expressed by counsel for Plaintiff in those motions. Specifically, the Court advised counsel for Plaintiff that if her personal and physical problems were preventing her from adequately representing her client, she should either get additional help or withdraw and allow another attorney to substitute for her client. She assured the Court that she understood.[2]

At the status conference, the Defendant also requested an extension of pretrial deadlines in light of the delays in the litigation associated with the motion for summary judgment.  The

---

[1] The Court has reviewed the audio recording of this conference and confirmed this.
[2] The Court has also confirmed this part of the conference.

3

Court was agreeable to the request.  As the minute entry reflects, "[a]t the request of the parties . . . the deadline for filing the final pretrial order [was] extended to **August 12, 2016**, and the final pretrial conference [was] reset for **September 22, 2016**[.]" (Doc. 48.)

On June 14, 2016, Plaintiff filed a "Motion Requesting Permission to File Memorandum in Response to Motion to Motion to Strike in Excess of Page Limit." (sic) (Doc. 61) and attached a proposed twenty-six page opposition to the instant motion. (Doc. 61-1.)  On June 20, 2016, Defendant replied to the proposed memorandum in opposition. (Doc. 62.)

On July 15, 2016, Defendant filed an Unopposed Motion for Extension of Unexpired Pretrial Deadlines and Continuance of Pretrial Conference and Trial Date. (Doc. 65.)  On July 18, 2016, the Court granted the motion and continued the trial date to September 25, 2017 (Doc. 66).

On August 22, 2016, the Court granted the Plaintiff's motion to exceed the page limit in connection with her opposition to the instant motion. (Doc. 67.)  On the same day, the opposition was docketed. (Doc. 68.)

According to the docket sheet, on August 26, 2016—over two months after filing her original opposition to the instant motion and nearly three months after the June 1, 2016 conference—Plaintiff submitted additional exhibits in connection with her opposition. (*See* Doc. 68.)  Specifically, Plaintiff included one hundred, ninety-four (194) pages of additional exhibits, most of which consisted of the Plaintiff's deposition.  (*See* Doc. 68-6.)  At no time was Plaintiff granted leave of court to submit these exhibits.  Further, this submission appears to be in violation of at least the spirit of the Court's June 1, 2016, order that no additional exhibits would be considered in connection with the motion for summary judgment. (Doc. 74 at 12–13.)

## II.      Parties' Arguments

### A.  Defendant's Memorandum in Support (Doc. 42-1)

Defendant seeks an order striking audio recordings of four individuals—Nikisha Washington, Jermaine Antoine, Terri McCray and Deandre Augustus.  Defendant advances several arguments, but the Court will focus on one.

Defendant contends that the Plaintiff failed to disclose the witnesses at issue in his discovery responses.  Plaintiff did not mention these four individuals in his initial disclosures, and he omitted them in his responses to Defendant's interrogatories.  Plaintiff also failed to supplement his discovery to list these witnesses.

Further, the Defendant contends that the failure to disclose these witnesses was not harmless or substantially justified.  Defendant argues that Plaintiff considers this evidence important, and that underlines how crucial it was for the Defendant to designate the witnesses. Defendant has also been prejudiced; it neither interviewed nor conducted discovery on these witnesses because it was unaware that the Plaintiff viewed them as material.  The discovery deadline has also long passed, and reopening discovery would lead to further prejudice in the form of time and expense.  A continuance would further prejudice the Defendant, as it may have a limited amount of time to identify rebuttal witnesses.  Lastly, Plaintiff has failed to offer an explanation for the failure.

In closing this section, Defendant asserts that the appropriate remedy is striking the witnesses.  Defendant cites case law to support this argument.

**B. Plaintiff's Response to the Defendant's Motion to Strike Recordings (Doc. 61-1)[3]**

In sum, Plaintiff argues that the four witnesses in the recordings were identified in prior submissions, that the Defendant was not prejudiced by the submissions and has time to depose these persons, that the recordings need not be sworn, and that the Defendant has failed to identify a basis for the award of costs and attorney's fees. The Plaintiff then explores each of these contentions in detail.

Concerning the first assertion, Plaintiff states that, at his deposition, Defense counsel "specifically asked for and received Mr. Robertson's answer as to whom he thought would be called as possible witnesses by him." (Doc. 61-1 at 2.) Defendant thus had prior notice. Specifically, Plaintiff points to testimony that "Nikisha Washington, Thomas Workman, and Terri McCray were possible witnesses as these were the only people who reached out to [Plaintiff] when he took [FMLA] leave in the summer of 2013." (Doc. 61-1 at 3.) According to Plaintiff, "[t]hese people had specific information from [Plaintiff] concerning his well-being and what he had to say about his situation at work, and any other matters they may have discussed with [Plaintiff]." (Doc. 61-1 at 3 (citing Plaintiff's Deposition at 160–61.) Plaintiff argues that Defendant could have obtained information from these individuals.

Further, Jermaine Antoine "was specifically named as an Assistant Store Manager alongside whom Mr. Robertson had worked." (Doc. 61-1 at 3 (citing Plaintiff's Deposition at 170).) Plaintiff said that this individual also had relevant knowledge that the Defendant could have learned "if the Defendant had chosen to actually investigate Mr. Robertson's complaints, his charge, and later his claims." (Doc. 61-1 at 3.)

---

[3] Plaintiff's twenty-six page opposition is long and winding. However, because the Court finds that a complete picture of Plaintiff's brief is important, the Court will summarize the memorandum in detail.

Plaintiff argues that all four individuals who were interviewed and recorded are "people who worked alongside Mr. Robertson at the North Baton Rouge and Denham Springs stores. The Defendant was aware of these individuals and their relationship to the lawsuit (which is non-existent) and their working relationships with [Plaintiff][.]" (Doc. 61-1 at 3–4.) Plaintiff maintains that this "is and should be evidenced in the Defendant's personnel records, records regarding staffing, and other internal documents." (Doc. 61-1 at 4.)

Plaintiff reiterates that the four individuals worked with Plaintiff at the two stores. Plaintiff argues that it "was conceivable and inevitable that they would have knowledge concerning" the store managers and staff. (Doc. 61-1 at 4.) Plaintiff claims that the "information garnered from these three individuals has always been available to Defendant and should have been gathered during the EEOC investigation and after Mr. Robertson filed this lawsuit." (Doc. 61-1 at 4.)

According to Plaintiff, Defendant "should have investigated" the issues involving these witnesses. (Doc. 61-1 at 4.) Plaintiff then argues why. Plaintiff reurges: "In his deposition taken by the Defendant on December 30, 2015, Mr. Robertson named three of the four individuals and specifically named two as being possible witnesses." (Doc. 61-1 at 5.)

Plaintiff next claims that Plaintiff stated in his deposition that three of the interviewed people personally reached out to Mr. Robertson when he was on Family Medical Leave"; "Defendant knew prior to filing its motion for summary judgment that at least two of the four individuals had information directly from [Plaintiff], and that at least one other named person, Jermaine Antoine, had interacted with [Plaintiff] during the significant time frame in which [Plaintiff's] claims arose." (Doc. 61-1 at 5.) Plaintiff argues that Defendant should have known about this information "years ago when the claims arose[.]" (Doc. 61-1 at 6.)

7

Plaintiff continues that this evidence is admissible under Fed. R. Evid. 803(21) as "reputation concerning character." These individuals knew about Plaintiff's excellent character and about the poor character of David Gibson, the store manager at the North Baton Rouge store.

Plaintiff's next section purports to discuss how the evidence is not prejudicial. Plaintiff begins by stating how he provided initial disclosures. Plaintiff then states how Defendant sought in interrogatories the identity of all persons "who possess knowledge pertaining to any fact or issue involved in this case" and "all witnesses [Plaintiff] believe[s] may have, or actually did witness any alleged discrimination or whom were otherwise made aware of the alleged discrimination." (Doc. 61-1 at 7.) Plaintiff said he answered these questions "[b]ased on the information and understanding of [Plaintiff] and his counsel at the time the Interrogatories were answered." (Doc. 61-1 at 7.) Plaintiff said "there was no possible way to believe that there were witnesses to the discriminatory acts." (Doc. 61-1 at 7.) Plaintiff then explains how Washington and McCray "did witness Mr. Gibson's rude and unprofessional conduct towards [Plaintiff], avoiding him, complaining about [Plaintiff's] Family Medical Leave, and other personal attacks." (Doc. 61-1 at 7.)

Plaintiff asserts that the "central evidence that raises genuine issues of material facts are the acts and omissions of district and regional management in attempting to discipline [Plaintiff] and Berda Cage for violations that did not exist, and the use of David Gibson as a conduit for the imposition of the undeserved discipline." (Doc. 61-1 at 8.) Plaintiff elaborates on this point for several paragraphs before stating:

> The conversations with the four individuals occurred after the Interrogatories were answered, and after the deposition of Mr. Robertson wherein he provided the names of three of four individuals as either persons who may be called as witnesses, and one as a person who worked alongside him during the pertinent time frame. Three of those conversations and the information gathered did not occur until after the discovery deadline had passed and after the Defendant had

8

> filed its motion for summary judgment.  What the individuals had to say was not
> known until counsel for Mr. Robertson contacted them.  The import of what the
> four individuals had to say was not understood until the Defendant forwarded the
> final discovery and counsel's perception of the case shifted to discount the
> argument that David Gibson was a lone actor.

(Doc. 61-1 at 8–9.)

The Plaintiff then declares that the interrogatories, which were objected to, were "simply too broad and all-encompassing to be subject to sanctions." (Doc. 61-1 at 9.)  Plaintiff attempts to distinguish the case cited to by Defendant for the "substantially justified or harmless" analysis.

The Plaintiff then contends that Defendant was under a duty to investigate the EEOC complaint.  These four witnesses, Plaintiff maintains, "fit that category." (Doc. 61-1 at 11.)  The Plaintiff then elaborates on why the Defendant should have expected testimony from Washington.

Defendant's next section is entitled, "The Evidence Was Available to the Defendant."

(Doc. 61-1 at 12.)  Plaintiff begins:

> Ideally, counsel for Mr. Robertson would have, and preferred to have gathered
> evidence prior to and during the EEOC investigation, and if a suit was then filed
> under those circumstances, the Plaintiff's case would have been very nearly trial
> ready.  However, due to circumstances beyond the control of either Mr. Robertson
> or his counsel, evidence was gathered at a much later date.  In truth, Mr.
> Robertson's new view of the claims are supported by evidence received in
> discovery only a few months ago. [(citation omitted)]

(Doc. 61-1 at 12.)  Plaintiff continues by stating that "Neither [Plaintiff] nor his counsel knew what the four individuals would say when contacted by his legal counsel." (Doc. 61-1 at 12.)  Plaintiff states: "The conversations are presented without redaction, are unrehearsed and above all else were readily available to the Defendant, had the Defendant chosen to timely and properly investigate the charges and claims of Mr. Roberson, instead of summarily firing him on only the word of Ms. Allen." (Doc. 61-1 at 12.)  When Defendant denied the allegations in Plaintiff's

complaint, Plaintiff says, it was under an obligation to make a reasonable inquiry into the evidence, and it failed to do so.

Lastly, Plaintiff says:

[I]t was not until the week that the response was submitted that counsel for Mr. Robertson reviewed and realized that she would have to file the audio recordings as evidence, that supported the legal position that it was not Mr. Gibson, but management officials higher up who were responsible for the discriminatory practices that Mr. Gibson had carried out.

(Doc. 61-1 at 13.)  Washington's conversation occurred on January 23, 2016, but he was previously disclosed as someone who might be a witness; the other three conversations took place after Defendant filed its motion for summary judgment.  "All four recorded conversations were the first contact counsel had made with the four individuals.  There had been no previous recordings and neither Mr. Robertson nor his counsel knew what those individuals would say.  The conversations were honest, candid, and unbiased." (Doc. 61-1 at 13–14.)

Plaintiff next argues that the audio records were submitted in proper form.  Plaintiff argues that DVDs of the conversations have been submitted to the Court.  Further, they are authentic, Plaintiff says, under Fed. R. Evid. 901(a)(6)(A), as each of the four individuals answered the phone.   The fact that there is not time to take the depositions of these individuals is irrelevant, as Defendant did not need to take the deposition.  Plaintiff argues that the audio is admissible under Rule 803, 807, and 901.  Plaintiff closes by urging the superiority of these audio recordings to the evidence submitted by the Defendant.

The subsequent section of Plaintiff's memo is devoted to how Plaintiff's counsel did not violate the Louisiana Rules of Professional Conduct.  As the court is not basing its ruling on this issue, this discussion is omitted.

Plaintiff's fifth section addresses "Why the Conversations Should Be Allowed as Evidence." (Doc. 61-1 at 20.)  Plaintiff claims these witnesses "present relevant information that support [his] claims." (Doc. 61-1 at 20.)  Specifically, the witnesses provide information about the "work environment at the North Baton Rouge and Denham Springs stores." (Doc. 61-1 at 20–21.)  The witnesses provide information about Plaintiff's "character" and "integrity" and about Mr. Gibson and "Ms. Allen's character." (Doc. 61-1 at 21.)  Plaintiff then describes certain facts as being relevant, including:

- Gibson "avoided interaction" with Plaintiff and "complained" about Plaintiff being on FMLA leave. (Doc. 61-1 at 21.)

- Gibson was "widely known among the employees at the two stores to have had difficulties managing the North Baton Rouge" (sic), and Gibson "was fired from his position as store manager and replaced by another employee." (Doc. 61-1 at 21.)

- "That Ms. Allen was playful, of a joking nature, and acted rather young for her age is also relevant factual information, and makes it more likely that not that [Plaintiff's] interactions with her were of a joking nature." (Doc. 61-1 at 21.)

- "That Mr. Gibson was beleaguered, and that he mistreated Mr. Robertson.  In that Ms. Washington and Ms. McCray speak of Mr. Gibson avoiding Mr. Robertson and had interpersonal conflicts with Mr. Robertson, supports the fact that Mr. Robertson was reasonable in believing that avoiding Mr. Gibson by transferring to another store would bring an end to his problems with the Defendant." (sic) (Doc. 61-1 at 21) and

- McCray stated that Gibson "made statements complaining about [Plaintiff] taking Family Medical Leave." (Doc. 61-1 at 21–22.)

Plaintiff then asserts: "These facts if proven at a trial of the matter will be determinative of whether or not [Plaintiff] was mistreated and was forced into transferring to another store in an attempt to resolve the mistreatment he was experiencing" at the North Baton Rouge store. Plaintiff also cites to how Plaintiff was regarded by his peers as support for his claim that he was "selected for future advancement" and that "he was not arrogant as David Gibson and John Wymer had opined." (Doc. 61-1 at 22.)

Plaintiff next discusses the purpose of the motion for summary judgment and what he believes are the genuine issues of material fact existing in this case.  Such issues of fact include:

- "whether or not the source of the unfair treatment of which [Plaintiff] complained was Mr. Gibson or the upper management" (Doc. 61-1 at 23);

- "whether or not the Defendant led its employees, including Ms. Washington, Ms. McCray, and Mr. Antoine to believe that Mr. Gibson and not those who had supervision and authority over Mr. Gibson were responsible for the problems the Plaintiff and the employees at the North Baton Rouge store faced and witnessed" (Doc. 61-1 at 23); and

- "whether or not Ms. Allen engaged in mutual joking for Mr. Robertson, or whether or not he approached her without her encouragement and consent" (sic) (Doc. 61-1 at 23)

Plaintiff says that Augustus' "statement concerning the character and reputation of [Plaintiff] and Ms. Allen are relevant, and support the testimony of [Plaintiff], and the material fact concerning the joking." (Doc. 61-1 at 23.)

Plaintiff then explains that Defendant is arguing in this case that Plaintiff had difficulties "because of his interpersonal conflicts with various black men," but:

> [I]nternal documents the Defendant was required by law to turn over in discovery, were received only a few months ago, show that it was upper management personnel, including Steven Howe, a white man, who along with other upper management personnel who imposed the disciplinary measures that caused [Plaintiff] to seek [FMLA leave] and a transfer from the North Baton Rouge store to the Denham Springs store.  [Plaintiff] was unaware that the black men, Mr. Gibson, Kevin Kydd, and Reggie Wells were receiving instructions from Steven Howe and other upper management as to what to say and do in their investigations and imposition of discipline against [Plaintiff].  At this juncture, the proffered audio recordings prove that there are genuine issues of material fact and support Mr. Robertson's testimony.

(sic) (Doc. 61-1 at 23–24.)

Plaintiff argues that summary judgment should be denied.  Plaintiff then elaborates on how his termination was unjustified and discriminatory.  Plaintiff states that the "audio

recordings support the material fact that the employees were led to believe that Mr. Gibson was a beleaguered store manager who caused problems for his staff, and that [Plaintiff] was an exceptional and respected assistant store manager who was expected to one day be a store manager." (Doc. 61-1 at 25.)  The audio recordings expand on Plaintiff's testimony.

After reiterating that upper management were using "black men 40 years of age and older as cover for acts and omissions actually originating with persons who are not black," Plaintiff declares, "Indeed, this ongoing act of misdirection is itself not only repugnant, but racism itself." (Doc. 61-1 at 25.)  Plaintiff again denies that he had any idea that upper management were using others to perform tortious acts and maintains that "[i]t took legal counsel" to make these determinations. (Doc. 61-1 at 25.)

In closing, Plaintiff summarizes his argument: (1) Defendant has not been prejudiced, (2) Defendant has had an opportunity to interview these four individuals "since receiving [Plaintiff's] complaints and EEOC charges," (3) there was no violation of the Rules of Professional Conduct, and (4) the "recordings have probative value and are admissible evidence that are permitted by the rules of evidence." (Doc. 61-1 at 26.)

### C.  Defendant's Reply (Doc. 62)

Defendant describes Plaintiff's opposition as "rambling" and asserts that "in many ways [it is] another effort by Plaintiff to file yet another opposition to Home Depot's Motion for Summary Judgment." (Doc. 62 at 1.)  Defendant also contests Plaintiff's assertion that it submitted discovery at the last minute.

Defendant's first section focuses on Plaintiff's failure to identify the witnesses at issue. Defendant says that Plaintiff concedes that these witnesses are irrelevant to the central issue: whether the Plaintiff was terminated for discriminatory reasons.  Further, Plaintiff did not deny

that he failed to disclose the witnesses; rather, "Plaintiff's counsel makes the incredible assertion that Home Depot had a chance to interview these witnesses when Plaintiff was terminated, after Plaintiff filed an EEOC charge, and after Plaintiff filed his lawsuit against Home Depot." (Doc. 62 at 2.)  Defendant responds: "While Home Depot appreciates the suggestions by Plaintiff's counsel, she totally ignores her duties under Fed.R.Civ.P. 26(a)(1), Fed.R.Civ.P. 26(e)(1) and Fed.R.Civ.P. 37, and that is what is at issue in the current motion."  (Doc. 62 at 2.)  Defendant argues that Plaintiff needed to identify the witnesses that would support his claim so that this situation—surprise at a late stage in litigation—can be avoided.

Defendant next contends that these witnesses do not provide testimony relevant to the central issue in this case: whether the Plaintiff was terminated due to his race, sex, or age. Defendant cites to a number of statements made by Plaintiff in his opposition and asserts that the recordings should be struck as irrelevant.

Defendant then asserts that Plaintiff has used his opposition to the instant motion as a way to submit another opposition to the Plaintiff's motion for summary judgment.  Defendant maintains that there is no evidence in support of the Plaintiff's theory that David Gibson, the Plaintiff's supervisor, "was a pawn or 'conduit' for the discriminatory actions of District Manager Steven Howe." (Doc. 62 at 3 (citing Doc. 61-1 at 8, 13, 23, & 24).)

Defendant reurges that the recordings are unsworn and unreliable.  The conversations were framed entirely by Plaintiff's counsel without Defense counsel having an opportunity to be present.

Lastly, after again arguing for a violation of the Rules of Professional Conduct, Defendant asserts that Plaintiff's counsel implies that Defendant was "uncooperative during the discovery process." (Doc. 62 at 4.)  Defendant describes how, on September 21, 2015, it

14

submitted responses following a two week extension.  Then, on November 27, 2015, Plaintiff's counsel requested a conference to discuss the responses.  According to Defendant, on three separate occasions, Plaintiff's counsel postponed the discovery conference, which finally took place on January 26, 2016.  Defendant supplemented its response on February 2, 2016, and "never heard of any other issues from Ms. Willis regarding discovery." (Doc. 62 at 5.)

### III.  Discussion

#### A.  Additional Exhibits

Preliminarily, as stated above, on August 26, 2016, the Plaintiff submitted one hundred, ninety-four pages of additional exhibits to support his opposition to the instant motion. (Doc. 68-6.)  Most of it consists of Plaintiff's deposition.  Again, this filing took place over two months after Plaintiff filed her original opposition to the instant motion and nearly three months after the Court's June 1, 2016, status conference.

The Court will not consider these additional exhibits.  Plaintiff was not granted leave to file them.  Further, the Court stated in its June 1, 2016, order that it would not be appropriate for the Plaintiff to submit additional exhibits in connection with his motion for summary judgment. (*See* Doc. 74 at 12–13.)  While the Court did not specifically bar the Plaintiff from submitting additional exhibits in connection with the motion to strike, the Court cannot help but wonder why Plaintiff's counsel would think it appropriate to sneak exhibits into the record for the instant motion when the Court specifically stated that additional exhibits would not be considered for the motion for summary judgment.

In short, the Court agrees with the Defendant; these extra exhibits appear to be yet another attempt to supplement the record in violation of the Court's June 1, 2016, order. Under

the circumstances, the Court will decline to consider the documents submitted untimely and without leave on August 26, 2016. (Doc. 68-6.)[4]

### B. Rule 26 Violations

Under Federal Rule of Civil Procedure 26, "a party must . . . provide to the other parties" certain initial disclosures. Fed. R. Civ. P. 26(a)(1)(A). Generally these disclosures are done "without awaiting a discovery request," "[e]xcept . . . as otherwise . . . ordered by the court[.]" *Id.* The parties must disclose, among other information, " the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subject of that information—that the disclosing party may use to support its claims or defenses[.]" Fed. R. Civ. P. 26(a)(1)(A)(i).

Here, by court order, the Rule 26(a)(1) disclosures were due by June 15, 2016. (Doc. 17.) Without question, the Plaintiff did not include in his list of potential witnesses Nikisha Washington, Jermaine Antoine, Terri McCray and Deandre Augustus. (See Doc. 42-2 at 5.)

Additionally, the Plaintiff was asked in Defendant's Interrogatory No. 1 to "[i]dentify all persons . . . who possess knowledge pertaining to any fact or issue involved in this case." (Doc. 42-4 at 1.) After objecting to this question on several grounds,[5] the Plaintiff listed a few individuals, but he did not include the four witnesses at issue in the instant motion. In Interrogatory No. 6, Plaintiff was asked to "[i]dentify all witnesses [he] belive[s] may have, or actually did witness any alleged discrimination or whom were otherwise made aware of the alleged discrimination." (Doc. 42-4 at 6.) Plaintiff merely objected and provided no substantive answer.

---

[4] Nevertheless, giving the Plaintiff the benefit of the doubt and considering the importance of the issue, the Court did review the specific pages of Plaintiff's deposition that he cited in his opposition. As will be discussed below, these deposition excerpts do not justify Plaintiff's failure to comply with his discovery obligations.
[5] The Court disagrees with Plaintiff and finds that this interrogatory was not overly broad.

16

Under Rule 26(e), "[a] party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory . . . —must supplement or correct its disclosure or response" as follows: "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" Fed. R. Civ. 26(e)(1)(A).

Here, the Court's scheduling order established that discovery was due by February 1, 2016. (Doc. 17.) Nevertheless, the Plaintiff has failed to demonstrate that he supplemented his discovery responses to include the names of the above four witnesses. As a result, the Plaintiff has clearly violated Rule 26. Indeed, the Plaintiff does not seriously contest this in his lengthy opposition. Thus, the central question is whether Plaintiff's conduct was justified and whether sanctions are warranted.

### C. Rule 37 Sanctions

Rule 37 provides: "If a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "In evaluating whether a violation of rule 26 is harmless," district courts "look to four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003) (citing *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir.1998)).

17

"The burden is on the party facing sanctions to prove that its failure to comply with Rule 26(a) was 'substantially justified or harmless.' " *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001)); *see also R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271–72 (6th Cir.2010). The Court's decision on this issue is subject to an abuse of discretion standard. *See Texas A&M Research Found.*, 163 F.3d at 252 (citing *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998)).

Having carefully considered the law, the facts in the record, and the arguments and the submissions of the parties, the Court finds that Plaintiff has not satisfied his burden of proving that the failure to disclose these witnesses was substantially justified or harmless. As will be demonstrated below, each of the four factors weigh in favor of striking the recordings.

### a.   Importance of the Evidence

The parties dispute the importance of the testimony at issue. Defendant argues that these witnesses are irrelevant to the central issue of discrimination. Though the Plaintiff is somewhat inconsistent at times (*see* Doc. 61-1 at 3–4), it is clear reading his brief as a whole that he believes these witnesses are "determinative" of key issues in the case. (Doc. 67 at 22.)

Even assuming that the Plaintiff was correct, the Fifth Circuit has made clear that "[t]he importance of such proposed testimony cannot singularly override the enforcement of local rules and scheduling orders." *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990)); *see also Hamburger v. State Farm Mut. Auto. Ins. Co.,* 361 F.3d 875, 883 (5th Cir. 2004). "Moreover, the claimed importance of Plaintiff['s] [witnesses'] testimony merely underscores the need for Plaintiff[] to have complied with the court's deadlines or at least informed the trial judge in advance if good

faith compliance was not possible." *Barrett*, 95 F.3d at 381; *see also Hamburger*, 361 F.3d at 883 ("the importance of the testimony underscores how critical it was for [plaintiff] to have timely designated" the expert).

In sum, the Plaintiff is not excused from his obligations under the scheduling order merely because he believes these witnesses are important, and, indeed, this is all the more reason Plaintiff should have revealed their identities in a timely fashion.  The Court finds that this testimony is "not so important as to weigh in favor of admission" of the evidence, given the above admonitions from the Fifth Circuit. *See Broussard v. Go-Devil Mfg. Co. of La.*, No. 08-124, 2014 WL 354525, at *6 (M.D. La. Jan. 23, 2014) (citing *Barrett*, 95 F.3d at 381).[6]

### b.  Prejudice

The Court finds that the prejudice to Defendant is high.  Assuming (as Plaintiff contends) that these witnesses are "determinative" to important issues in the case, then Plaintiff has ambushed Defendant with critical new witnesses months after the close of discovery and shortly before Defendant's reply brief was due.[7]

Further, Defendant did not have an opportunity to depose these witnesses before filing its reply.  In fact, Defendant could not even cross-examine the witnesses during the telephone call.

Lastly, the Plaintiff's inclusion of these individuals with his opposition to the motion for summary judgment "was not the first time Plaintiff[] . . . failed to fulfill [his] . . . obligations" under the various scheduling orders in this case; and, "[t]here can be no question that each delay

---

[6] The Court notes that, even if it had concluded that the importance of the testimony weighed in the Plaintiff's favor, the other three factors (analyzed below) would still outweigh this lone factor and warrant the striking of these recordings.

[7] As will be discussed below, Plaintiff claims that Defendant had prior knowledge of these witnesses, but the Court rejects this argument.

. . . resulted in additional expense and disrupted the Defendant['s] preparation of the case." *Barrett*, 95 F.3d at 381.

Considering each of these, Defendant has been prejudiced in several different ways.  The Court finds that this factor weighs in favor of striking the recordings.

### c.   Possibility of Curing the Prejudice

Though Plaintiff has suggested that the prejudice could be cured by a continuance or by allowing Defendant to depose the witnesses at issue, Plaintiff has "offered no reason to believe a continuance would have cured [his] dilatory behavior. Instead, it is likely that a continuance would have resulted only in additional delay and would have unnecessarily increased the expense of defending the lawsuit." *Barrett*, 95 F.3d at 381; *see also Hamburger*, 361 F.3d at 883 ("Obviously, a continuance 'would have resulted in additional delay and increased the expense of defending the lawsuit.' " (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir.1990)). "As [the Fifth Circuit] has noted, a continuance does not, in and of itself, 'deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders.' " *Barrett*, 95 F.3d at 381 (quoting *Geiserman*, 893 F.2d at 792).

Considering these Fifth Circuit cases and considering the fact that the Plaintiff's conduct has already resulted in one continuance of this case (*see* Doc. 65–66), the Court finds that this factor weighs in favor of striking the recordings.

### d.   Explanation for the Failure to Disclose

Throughout the Plaintiff's lengthy opposition, he asserts a number of reasons why he failed to comply with his discovery obligations.  The Court finds these weak at best.

Plaintiff argues that these witnesses were identified as potential witnesses in his deposition.  Despite the Court's conclusion that the Plaintiff's additional evidence should not be

20

considered, the Court has reviewed the pages cited by the Plaintiff and finds that these witnesses were merely mentioned by Plaintiff amidst other testimony.  The Court further finds that merely referencing these individuals at a deposition—even in providing substantive information—does not excuse the Plaintiff of his obligations under Rule 26. *See Poitra v. Sch. Dist. No. 1 in the Cty. of Denver*, 311 F.R.D. 659, 666 (D. Colo. 2015) ("Reduced to its essence, Plaintiff's argument maintains that a party's duty to supplement Rule 26(a)(1)(A)(i) disclosures is satisfied if an individual that may have relevant information is mentioned, even in passing, during a deposition. That argument is predicated on an incomplete reading of Rule 26(a)(1)(A)(i) and would effectively undermine the very purpose for initial disclosures.")

Plaintiff's counsel next claims that she could not have known about the need to disclose these witnesses until she received discovery from the Defendant.  But this argument fails for several reasons.

First, Plaintiff's own brief contradicts this contention.  Plaintiff specifically says that Defendant should have known of the significance of these witnesses by Plaintiff's deposition testimony.  By that logic, Plaintiff himself should have known of their significance solely from the Plaintiff's knowledge and without resorting to Defendant's own discovery.

Second, Plaintiff does not identify what specific discovery responses were necessary for him to realize the significance of these witnesses.  Without a specific showing, the Court cannot find that the Plaintiff met his burden of offering an adequate explanation.

Third, Defendant responded to discovery in September of 2015. (Doc. 62-2 at 18, 33) Though Defendant has submitted evidence that Plaintiff had issues with these responses (Doc. 62-4), Plaintiff has failed to present any evidence that these problems were not timely resolved. Nor has Plaintiff's counsel demonstrated why she could not supplement her own responses

between the time she received Defendant's discovery (at the very latest, around the February 1, 2016 discovery cutoff) and the time she submitted her opposition to the motion for summary judgment on May 13, 2016. Accordingly, considering all these reasons, the Plaintiff's counsel has simply not proven that she needed discovery from the Defendant to fulfill Plaintiff's own Rule 26 obligations.

In sum, the Plaintiff's explanation for why he failed to comply with Rule 26 is inadequate.  He has failed to carry his burden on this issue.  This factor weighs in favor of striking the recordings.

### e.  Summary

In closing, the Court notes that the Plaintiff argues extensively about how Defendant failed to satisfy its obligation to investigate the Plaintiff's claim and why this is the reason that Defendant was caught off guard by the four witnesses.  In this instance, the best defense was not a good offense.  The Court rejects Plaintiff's claim and marvels at the audacity.  Viewing the record as a whole, the Court finds that it is the Plaintiff (specifically, his counsel) that has, on numerous occasions, failed to satisfy his obligations and comply with Court orders. (*See also* Doc. 74.)  This is merely another instance in a long string of abuses.

Having carefully considered the law, the record, and the arguments and submissions of the parties, the Court finds that each of the above four factors weighs in favor of striking the audio recordings at issue.  As a result, the recordings will not be considered in connection with the motion for summary judgment.[8]

---

[8] The Court also notes in closing that these recordings do not appear to be properly authenticated.  No affidavit or declaration was submitted with them, and there is no *evidence* that these recordings are what they purport to be. Thus, the recordings appear inadmissible.  *See Fisher v. Univ. of Kansas Facilities Operations*, No. 10-4102, 2011 WL 5868349, at *13–14 (D. Kan. Nov. 22, 2011).

Plaintiff attempts to rely on Fed. R. Evid 901(b)(6), but this argument fails.  Rule 901(b)(6) provides that evidence satisfying the authenticity requirement includes: "For a telephone conversation, *evidence that a call was made to the*

### f.   Costs and Attorney's Fees

Rule 37 also provides that, in addition to disallowing the use of a witness, "the court, on motion and after giving an opportunity to be heard: . . . *may* order payment of the reasonable expenses, including attorney's fees, caused by the failure[.]" Fed. R. Civ. P. 37(c)(1)(A) (emphasis added).

Though the Court would certainly be within its discretion in awarding attorneys' fees and costs for Plaintiff's counsel's conduct, the Court declines to do so.  The Court finds that the exclusion of the audio recordings is a sufficient sanction in this case.

## IV.   Conclusion

Accordingly,

**IT IS ORDERED** that the *Home Depot's Motion to Strike Recordings Used in Opposition* (Doc. 42) filed by Defendant The Home Depot U.S.A., Inc. is **GRANTED**;

**IT IS FURTHER ORDERED** that the audio recordings of Nikisha Washington, Jermaine Antoine, Terri McCray, and Deandre Augustus (Docs. 40-1–4) are hereby **STRICKEN** from the record.  These recordings will not be considered in connection with the Defendant's motion for summary judgment (Doc. 24); and

---

*number assigned at the time to: (A) a particular person*, if circumstances, including self-identification, show that the person answering was the one called[.]" Fed. R. Evid. 901(b)(6) (emphasis added).  By the plain language of the rule, the Plaintiff needed to submit evidence that the telephone number was "assigned at the time to" each of the witnesses at issue. *See* 31 Victor James Gold, *Federal Practice and Procedure* § 7111 (1st ed. 2017) ("Assuming Rule 901(b)(6) applies, identification of the party answering a telephone call begins with proof that the call was made to the number that the telephone company assigned at the time of the call to a particular person or business. Such proof permits the inference that the party answering the call is the person or business that was assigned the number dialed."); *see also Palos v. United States*, 416 F.2d 438, 440 (5th Cir. 1969) ("Here, *Villar dialed a number registered to the appellant*. When the phone was answered, Villar asked 'Palitos?' (a name under which appellant was known) and received a response 'Yes, this is he'. We think this evidence was sufficient to make out a prima facie case from which the jury could have concluded that the appellant was a party to the conversation." (emphasis added)). Plaintiff has pointed to no such evidence in the record. Thus, the Court is doubtful that Rule 901(b)(6) authenticates these recordings.

   Nonetheless, because the Court bases its decision on Fed. R. Civ. P. 26 and 37, the Court need not decide this issue at this time.

**IT IS FURTHER ORDERED** that, in all other respects, Defendant's motion (Doc. 42)

is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>March 3, 2017</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**